J-A19010-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BERNARD SMITH AND LACEY SMITH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| OLIVER QUISPE LUJAN, KATHERINE | : | No. 57 EDA 2020 |
| ORTEGO RAMOS, AND ALEX OLIVER | : | |

Appeal from the Judgment Entered February 3, 2020
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): No. 180103270

BEFORE:  PANELLA, P.J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY PANELLA, P.J.:                     Filed: March 5, 2021

Bernard Smith and Lacey Smith appeal from the judgment entered in favor of Appellees, Oliver Quispe Lujan and Alex Olivier. The Smiths were passengers in Olivier's car when it was involved in a collision with a car driven by Lujan. On appeal, the Smiths argue that the trial court erred in not granting a judgment notwithstanding the verdict ("jnov") or a new trial after the jury found that neither Appellee was negligent. They also contend the trial court erred in its instructions to the jury. We find both issues waived, and therefore affirm.

At approximately 3:30 in the morning on July 29, 2017, Olivier picked up the Smiths in his Uber ride-share vehicle, a Mazda minivan, in New Jersey. The Smiths entered the back seat of the minivan, and Olivier proceeded to northbound Interstate-95 ("I-95N") in order to drive the Smiths to their home

in Bensalem, Pennsylvania. While on I-95N, at approximately 3:50 in the morning, the minivan was hit in the rear by a Chevrolet Camaro driven by Lujan. The minivan spun around and crashed into the median.

The Smiths filed a complaint against both Olivier and Lujan, alleging that they were both negligent and that their negligence had caused the collision. The matter proceeded to a jury trial. On the first day of trial, Olivier testified that when he picked up the Smiths in the early morning hours of July 29, it was raining heavily and still dark out. He testified that he drove to I-95N and was driving in the middle travel lane at the speed limit. **See** N.T., 10/29/19, at 9-10. According to Olivier, he was still in the middle lane when he was rear-ended "like out of nowhere" by the Camaro driven by Lujan. **Id**., at 20. He stated that he did not see the Camaro at any time before he was hit by it and did not veer out of the middle lane before being hit by the Camaro. **See id**., at 24, 26.

Lujan also testified. He stated that he was also traveling on I-95N in the early morning on July 29 and that it was raining outside at the time. Lujan testified that he was driving 50 miles per hour and came up behind Olivier's minivan. **See id**., at 46, 50. According to Lujan, he moved into the right exit lane to exit at the upcoming exit, but as he did so, Olivier's minivan also moved from the middle lane into the exit lane in front of him and cut him off. **See id**., at 46, 76. Although Lujan stated that he slowed down and tried to avoid hitting the minivan, he was unable to do so and hit the rear of the

minivan with the front passenger side of the Camaro. ***See id***., at 46, 78. Pedro Carvallo, who was the front passenger in the Camaro, also testified that the minivan crossed into the exit lane in front of the Camaro. ***See*** N.T., 10/30/19, at 81-82, 86.

Both Bernard and Lacey Smith also testified. Bernard Smith testified that the minivan he and Lacey Smith were passengers in was rear-ended while driving on I-95N but that he "really didn't have any idea what happened. We got hit by something but didn't see anything." N.T., 10/29/19, at 102. Both he and Lacey Smith testified that they did not see the Camaro prior to the collision and that they did not have any issues with how Olivier was driving that night.

At the close of the testimony, and prior to the court's instructions to the jury, counsel handed the trial court the jury verdict sheet that had been agreed upon by all counsel. In relevant part, the verdict sheet read:

Question 1

Were either of the defendants negligent? Please answer for each defendant:

| | | |
|---|---|---|
| Oliver Quispe Lujan | Yes __ | No __ |
| Alex Olivier | Yes __ | No __ |

If you answer Question 1 "Yes" as to both defendants, go to Question 2.

If you answer Question 1 "Yes" as to only one defendant, go to Question 3.

> *If you answer Question 1 "No" as to both defendants, the Smiths cannot recover and you should not answer any further questions. Tell the court officer that you have reached a verdict.*

Verdict Sheet (emphasis added). When the trial court asked if all counsel agreed with the verdict sheet, counsel for the Smiths replied "yes." N.T. Trial, 11/1/19, at 5.

The court explained the verdict sheet to the jury during its closing instructions. The court specifically addressed the possibility with the jury that it could find that both defendants had not been negligent. *See id*., at 11-12. Counsel for the Smiths did not object at that time nor did counsel object during either of the two times that the court specifically asked all counsel if they had anything to add to the instructions before the jury was excused to deliberate. *See id*., at 44-45, 49-50.

After a short deliberation, the jury checked "No" next to the name of each Appellee in Question 1 and therefore returned a verdict in favor of both Appellees. When the verdict was read, counsel for the Smiths did not lodge any objection. *See id*., at 53-54. Instead, it was only after the verdict was recorded and the jury dismissed that counsel made a general objection that a new trial was warranted on the basis that the verdict was against the weight of the evidence. *See id*., at 55-57.

The trial court instructed counsel for the Smiths to file a post-trial motion, which counsel did. In the motion, counsel alleged, *inter alia*, that the court should grant a jnov or a new trial on the basis that the verdict was

against the weight of the evidence because the jury was required by law to find that at least one of the two Appellees had been negligent. The trial court denied the motion and the Smiths filed a timely notice of appeal.

In their court-directed 1925(b) statement, the Smiths listed 16 alleged errors by the trial court. *See* Concise Statement of Matters Complained of on Appeal at ¶¶ 18-33. The trial court in its 1925(a) opinion condensed the issues to two, stating that the Smiths "in summary, appear to complain that the verdict was against the weight of the evidence and that the Court gave improper instructions to the jury." Trial Court Opinion, 2/19/20, at 3. The court concluded that the verdict had not been against the weight of the evidence, stating that although there had been some discrepancies in Lujan's and Olivier's accounts of the accident, "there was no evidence presented that pointed to either driver being necessarily negligent." *Id*., at 5. The court also concluded that the Smiths had waived their claim regarding the jury instructions but that, even if not waived, the instructions had been proper. In their brief to this Court, the Smiths raise three issues:

> 1. Did the trial court abuse its discretion and commit reversible error by denying appellants' request for a [jnov], or in the alternative a new trial, when the jury entered a defense verdict on negligence, despite the fact that: (1) appellee, Lujan, and Olivier collided their vehicles; (2) no evidence was put forth at trial that anything other than the negligence of [Lujan and Olivier] caused the subject crash; (3) the Smiths were innocent passengers in Olivier's vehicle; (4) no evidence was put forth of negligence of an unnamed third party; and (5) no evidence was put forth as to any intervening or superseding causes for the collision?

2. Did the trial court commit an error of law in failing to grant a [jnov], or in the alternative a new trial, when the verdict in this case was so contrary to the evidence so as to truly shock one's sense of justice, and bore no reasonable relationship to the evidence presented at trial [ ] ?

3. Did the trial court commit reversible error by failing to instruct the jury that it may find comparative negligence on one or both defendants provided the combined negligence of defendants total [100] percent?

Appellants' Brief, at 6-7.

The Smiths contend that their first two issues attack the jury's verdict on the grounds that it was against the weight of the evidence. They argue that the verdict was contrary to the evidence because it was incompatible with a line of cases holding that "in circumstances where innocent passengers are injured and there is no evidence exonerating the defendant-drivers, the jury must find in plaintiffs' favor as to negligence and award some damages." *Id*., at 13. Because the jury did not do so here, the Smiths assert that the trial court was required to grant a jnov or a new trial on the basis that the verdict was against the weight of the evidence.

Appellees counter that the Smiths, while categorizing their claim as one that goes to the weight of the evidence, are actually raising a claim that the jury's verdict was not permissible because the jury was required to find one or both of Appellees negligent *as a matter of law*. Appellees argue that the Smiths waived any such objection to the verdict because they did not object to the jury verdict sheet which specifically allowed for the jury to find that

neither Appellee was negligent, or to the court's instructions regarding that portion of the verdict sheet. They also failed to object to the jury's verdict, which found that both Appellees were not negligent, before the jury was dismissed. Instead, the Smiths did not raise their claim challenging the verdict until their post-trial motion, which Appellees contend did not preserve it for appellate review. We agree.[1]

Under Rule 227.1(b) of the Rules of Civil Procedure, post-trial relief cannot be granted if the basis for the post-trial motion related to a verdict arose during the trial proceedings and the party did not raise a contemporaneous objection. **See Stapas v. Giant Eagle, Inc**. 198 A.3d 1033, 1041 (Pa. 2018); Pa.R.C.P. 227.1(b).[2] Requiring such a contemporaneous objection promotes judicial efficiency by providing the trial court with the opportunity to correct any trial errors that have been made. **See Stapas,** 198 A.3d at 1037.

Notwithstanding Rule 227.1(b), our Supreme Court has held that a claim which challenges a verdict on the grounds that it was against the weight of

---

[1] Although the trial court did not base its denial of the Smiths' post-trial motion on waiver, this Court may affirm a trial court's decision if there is any proper basis for the result reached even if it is different from the one relied upon by the trial court. **See In re Estate of Rood**, 121 A.3d 1104, 1105 n. 1 (Pa. Super. 2015).

[2] Rule 227.1(b) provides that "post-trial relief may not be granted unless the grounds therefor … were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial." Pa.R.C.P. 227.1(b).

the evidence does not have to be raised at trial and before the jury is discharged in order to preserve the claim. *See id*., at 1038 (citing *Criswell v. King*, 834 A.2d 505, 506 (Pa. 2003)). Rather, a weight of the evidence claim can be raised for the first time in a post-trial motion. *See id*. The reasoning behind this is that a weight of the evidence claim only "ripens after the verdict because it does not challenge *the jury's ability to render a verdict; instead it contends the jury's resolution of competing evidence was a* 'miscarriage of justice'." *Id*., at 1042 (emphasis added). Because a court cannot ask the jury to weigh the evidence differently, only the trial court can resolve a weight challenge. *See id*., at 1038. Therefore, a party raising a weight claim is not required to object before the jury is discharged to preserve the issue because the jury cannot resolve the claim. *See id*.

In *Stapas*, our Supreme Court considered the issue of whether a claim raised for the first time in a post-trial motion had properly been preserved where the claim was framed as a weight of the evidence claim, but actually challenged the jury's ability to render the verdict as a matter of law. The Court, in effect, adopted the general rule that if the objection to a verdict is that the "verdict is the product of trial error, or involves a discrete, correctable event at trial, or involves the capacity of the jury to return the verdict at all, the objection must be lodged before the jury is discharged." *Id*., at 1039.

The jury in *Stapas* returned a verdict for the plaintiff which included damages for future wage losses even though no evidence had been presented

to support such an award. The defendant did not object to the jury instructions or verdict form, nor did it object to the verdict before the jury was dismissed. Instead, it argued for the first time in its post-trial motion that the verdict had been against the weight of the evidence.

In finding this issue waived, the **Stapas** Court concluded that, although the defendant had labeled its challenge to the verdict as a weight claim, the defendant's position was actually that the jury did not have the ability to award damages for future wage losses as a matter of law because there was no evidence to support that award. The Court observed that the plaintiff had not presented any evidence on future lost wages, "and that issue was not ripe for the jury's consideration." **Id**., at 1042. The Court held that because the defendant's challenge went to the jury's capacity to reach the verdict that it did under the evidence before it, the challenge was not premised on the improper weighing of competing evidence but on "trial errors, correctable before the jury [was] discharged." **Id**., at 1034. As such, the defendant could not raise its objection to the verdict for the first time in a post-trial motion. Rather, it had to preserve the issue at trial by objecting to the jury instructions, verdict form or the verdict itself before the jury was dismissed. **See id**., at 1042.

We agree with Appellees that the Smiths' objection to the verdict is waived under **Stapas**. While the Smiths insist that their objection to the verdict in their post-trial motion has been properly preserved because it goes

to the weight of the evidence, the Smiths' argument is not that the jury improperly weighed competing evidence. Rather, the Smiths are claiming that they are entitled to a jnov or a new trial because the jury was not permitted as a matter of law to find that neither Appellee was negligent when there was no evidence that anything other than negligence on the part of one or both Appellees caused the collision. To that end, the Smiths argue:

> In the instant matter, the evidence presented was such that no possibility existed for both Lujan and Olivier to be exonerated. There simply was no exculpatory evidence, other than both drivers blaming each other, to explain how the collision could have occurred absent negligence on the part of at least one of the drivers.
>
> ***
>
> There was no testimony or suggestion that some intervening cause(s); external exculpatory circumstances, such as an act of God or mechanical failure; or an extraordinary event of nature caused the subject collision.
>
> ***
>
> There was never a suggestion throughout the trial that the plaintiffs were in any way contributorily negligent.
>
> ***
>
> Absent some other explanation, one or a combination of both defendant-drivers had to be negligent, and the only question for the jury was which one or what percentage is attributable to each defendant-driver.

Appellants' Brief, at 17, 41-42, 46; *see id*., at 48 (stating that under the above circumstances, the jury was "duty-bound" to enter a verdict against one or both of Appellees and in favor of the Smiths).

As these excerpts make clear, the Smiths are challenging the jury's ability to return a verdict that neither defendant was negligent and not its resolution of competing evidence. The Smiths were therefore required to object to the verdict sheet or the jury charge permitting the jury to find both Appellees not negligent or to the verdict before the jury was discharged. **See Stapas**, 198 A.3d at 1042. The Smiths, however, failed to do so.

Had the Smiths lodged a timely objection, the trial court could have addressed the issue of whether the law precluded the jury from finding that neither Appellee was negligent, as the Smiths now allege. The court could have then made any corrections or changes it deemed appropriate before the jury was discharged. Because the Smiths did not raise any timely objection that the jury lacked the authority to return a verdict that neither Appellee was negligent, we agree with Appellees that the claim is waived. **See id**.

In their third issue, the Smiths claim that the trial court erred by failing to "properly instruct the jury as to apportionment of comparative negligence between multiple defendants." Appellants' Brief, at 49. However, as the trial court found, the Smiths waived this issue by failing to object to the trial court's instructions regarding comparative negligence at trial. This Court has made clear that "where a party fails to specifically object to a trial court's jury instruction, the objection is waived and cannot subsequently be raised on appeal." **Bezerra v. Nat'l R. R. Passenger Corp.**, 760 A.2d 56, 64 (Pa. Super. 2000) (citation omitted).

- 11 -

Even if not waived, we agree with the trial court and Appellees that any error on the part of the trial court would be, at most, harmless. Because the jury determined that neither Appellee was negligent, it had no reason to apportion fault between Appellees. As such, the Smiths have also failed to show that they were prejudiced by the court's instruction relating to the apportionment of comparative negligence. **See Grove v. Port Auth. of Allegheny Cty.**, 218 A.3d 877, 889 (Pa. 2019) (holding that the trial court's failure to issue a negligence *per se* charge was harmless error when the jury found the plaintiff was negligent absent the requested charge); **Bennett v. AT Masterpiece Homes at Broadsprings, LLC**, 40 A.3d 145, 150 (Pa. Super. 2012) (stating that this Court will not reverse an order denying a new trial unless the trial court committed an error that controlled the outcome of the case). No relief is due.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/5/21

- 12 -